I forgot to mention that the appellant can reserve some time for rebuttal at the end. Do you want to reserve some time? Yes, Your Honor. Thank you. Five minutes is sufficient. Very good. Go ahead, please. Thank you, Your Honors. And may it please the Court, Jessica Bagdanov on behalf of Michael Kasolis, the liquidating trustee and plaintiff in this adversary proceeding. The order on appeal today is an order dismissing claims with prejudice on a 12B6 analysis. Specifically, the bankruptcy court dismissed varying claims where the trustee sought to avoid and recover approximately $7 million in post-petition transfers after, excuse me, the debtor caused a wine estate property to be sold post-petition, out from under the nose of the bankruptcy court. Interestingly, the debtor misled the bankruptcy court as to what was happening with those funds during the bankruptcy case post-petition. Now these funds— One of the curiosities about the case is it looks like nobody really did anything about that. You know, there was no motion to appoint a trustee, no indications that there was discovery to find out what was actually going on with the corporation. There was an adversary proceeding pending, Your Honor, by MUFG Bank. And the adversary proceeding determined—was about how much control does the debtor have over this property, which was owned by Coastal Cypress Corporation. At the end of the day, the debtor is deemed to own 100% of this corporation and deemed to have sole control of it. Now the debtor was not the proponent of the plan that was confirmed in this case. The creditor, MUFG Bank, confirmed a plan, and Mr. Kasoulis was appointed as liquidating trustee. Interestingly, the plan preserved the claims until the effective date of the plan in 2020. And so— But my point is—and this is not the trustee's fault—but before the effective date, while this litigation is going on, everybody left Mr. Brower in control of the corporation? He did. And interestingly, though, in the reports filed, I think all of the parties knew that this wine estate property was out there. It wasn't like this was a secret piece of real property. Everybody knew that the debtor ran a wine estate business and that Coastal Cypress Corporation held title. The issue was that Mr. Brower would file these reports that we've attached to the operative complaint where he says, you know, I can't take—I can't do anything with this property. The sale has not closed yet. The proceeds are safe. And at the same time, he bought himself a condo with the properties. He paid his wife a bunch of money. He made a loan to his son, invested in his son's business, and paid over $1.7 million to two suspended corporations. And all the while— But the key, from the trustee's point of view, is you've got to show that that property, that money was property of the estate. Absolutely right. And that's the high-level issue here of what the case is about. You can get into a lot of nuance and argument on the varying different claims on post-petition transfer versus disgorgement of legal fees, et cetera. But at the end of the day, the bottom line is, who was entitled to net proceeds from this wine estate property? And the trustee submits that every road you take leads to the answer that the estate was entitled to these monies. The first road you can take, Your Honors, is a direct—a direct way, 541A6. It's law of the case in this action that the debtor is the sole shareholder of this corporation. Some courts are comfortable ending the case analysis there. In Rayona, Judge Robles held almost matter-of-factly that a debtor's 100 percent shareholder interest in a corporation is estate property. But— Well, I don't think there's any question that the stock, the shareholder interest, is property of the estate. What you've got to show is that the corporation's property is property of the shareholder's bankruptcy estate. Absolutely right, Your Honor. And so that question of what does the estate own is the shares, essentially. But what does that mean? And the Hill case, the bankruptcy court held that a right to manage is a valuable estate asset. The debtor in that case was an individual. He owned 100 percent of a corporation. That corporation was the general partner of a partnership with the management rights that come along with being a general partner. And post-petition, they were transferred away, and the bankruptcy court avoided it as a post-petition transfer, considering the fact that this ownership interest, this right to manage, right to decide what happens to these proceeds, in this case the partnership control, was a valuable estate asset. Well, I would agree that if he sold the stock, that would be a post-petition transfer. But he never sold the stock, right? The corporation sold its assets. Is that — and that's not the same thing, is it? You mean that the Coastal Cypress Corporation sold its sole asset? Right. That's right. And there's an interesting question under the corporation's code of whether that sale itself should have received court approval before doing so. The first protection case from the BAP in 2010 said that the debtor's membership interest and contractual rights under the operating agreement became property of the estate. So a sole shareholder's decision to sell substantially all of the assets, and indeed all of the assets because there was only one, the wine estate property, should he have gotten court approval for that? Maybe. But he didn't. But that's not what the trustee's case is premised on or the crux of it. And if you go down a different road, that is the road of alter ego. And this panel is very familiar with the idea that a sole, 100 percent shareholder interest in a corporation can be — and it's, I think, in most cases a factual issue — whether the asset of this corporation is really the alter ego of the debtor. And the bankruptcy court's analysis can be found in her memorandum decision on the First Amendment, incorporated by reference. And Apelli's briefs focus on the fact that, you know, they talk about reverse corporate veil-piercing as a theory of liability. But in the bankruptcy context, alter ego is not only used to find liability or shift liability from the individual to a corporation. It's also — Doctor, is alter ego a bankruptcy doctrine or a state law doctrine? A state law doctrine by California. And California would apply in this context. So, bankruptcy courts take this idea from state law and see, under those factual circumstances like unity of interest, disregard of corporate formalities, et cetera, in determining what property falls within the equitable bankruptcy estate. And the — while alter ego is used in all types of non-bankruptcy contexts, we have here a situation where, as Judge Clarkson analyzed in the Singh case from 2019, that the alter ego doctrine can also be employed to determine whether a shareholder or a corporation is the true owner of property. This is about what falls within the umbrella of estate property. It's not a merger issue. It's not an issue where a parent is trying to use assets of a subsidiary to satisfy parent debts. It's not about piercing the corporate veil. It's about looking at the equity of who owns this property. And then it takes us back to what is this case about. The case is about who was entitled to the $7 million of net sale proceeds. Nobody but the estate. Alter ego, I think, is dispositive here. But there's other ways. And importantly, as Your Honor noted, we have to look at state law on some of this. And the Bankruptcy Code specifically preserves that states decide what property rights are, the state law. And so California has the Corporation's Code, and in this particular instance, Coastal So we look to state law to look for what are the debtors, as a shareholder, rights under the articles. And I would submit to Your Honors that there's a timing component to this, as well as a control component in what you look for. The timing question is, assuming that as of the petition date, the shareholder, the estate, only had an expectancy interest, such that it's not property of the estate, the timing question is, when does that trigger, or what event triggers that from turning into a direct vested right of the debtor's estate? And in this case, the Articles of Incorporation provide that in the event of a liquidation event, stock shareholders shall be entitled to receive legally available assets for distribution. That's Section 2 of the Articles of Incorporation. And it's interestingly different from, for example, Section 1, which talks about the right to a dividend. The language is different. But I guess the problem I have with that is you're saying that that language of the articles makes the shareholder the owner of the money immediately upon the occurrence of these events. But it really just says it shall be distributed. Yes. Isn't that different from being an owner of it? He's got a great claim against the Corporation, give me the money. But it's different to say, it's my money now. I disagree from a standpoint of timing. The question is, at the end of the day, was there a liquidation event? And we know that there was. One of them in the articles is a sale of substantially all of the corporate assets. It is undisputed. This corporation had one asset, the wine estate property. That was sold. That triggered a liquidation event. That triggered rights that the shareholders have directly, as opposed to relying, for example, on a board of directors' discretionary decision to pay a dividend in one calendar year or another. So here, upon the sale of substantially all of the debtor's assets, the shareholders had a direct right. After payment of all of the corporate obligations. Absolutely right. So if there were tax obligations or attorney's fees that were due, those all have to be paid in advance before the shareholder would have any interest in the remainder under your theory? Yes, with a caveat, Your Honor, as to what one word you said. Do they have to be paid or do they have to be made provided for? The California Corporations Code says that they are paid or provided for. In this case, the complaint alleges that all creditors were paid, including the IRS, which, by the way, he overpaid to hide more assets from the estate, but no matter. But you have a claim for that. You have a claim against him for anything he did that was in breach of his fiduciary duty. And that claim remains. Yes, it does. But not the claims, according to the judge, that were for payment of the tax claim, payment of attorney's fees incurred by the corporation in the sale. Agreed. But you're trying to recover those funds. No, Your Honor. We are not trying to recover proceeds of this property sale that were paid to legitimate creditors. And as the complaint alleges, at the end of the day, creditors were paid, the IRS was provided for, the shareholders have a direct right, not an expectancy interest, in the balance. The balance is $7 million. We are not trying to go after and recover creditor receipts. Because I don't think that, I think everybody in the courtroom would agree, the estate wouldn't have an entitlement interest to that, wouldn't have a direct right or any kind of right. What the estate does have a right in, and I submit to Your Honors that the triggering event of a liquidation where the corporation paid creditors, made provision for the creditors, the balance belongs to the shareholders in a direct right. They can't say, pay it over to me now. But the question is, is it an expectancy interest or a direct interest? And I submit to Your Honors that it's a direct interest, and that means that it's property of the bankruptcy estate under the Bankruptcy Code. I just want to point out, you're well inside your five minutes, so if you want to reserve, you can. But if you want to keep going, that's fine, too. It's up to you. I appreciate Your Honor for saying that. I misread this clock. Okay. All right. I'll pause at the moment. Thank you, Your Honors. Thank you, Judge Ferris. So, who's going first, and how much, how are you dividing up the time? Ryan O'Day. I'll be going first. We'll be dividing the time up. Eight minutes will be my cutoff, but somewhere between five and eight, and then split the time in half minutes or so for the other two. Okay. I'll try to help you keep track of that, but ultimately, it's on you, so. I'm sorry. Ms. Smith? Excuse me. I cannot hear Mr. O'Day. Okay. I'll get the mic a little closer. Can you hear me now? Can you hear him now? Cell phone commercial. As loud as you would. Thank you. Okay. Maybe get just a little bit closer to the microphone and speak up a bit. Okay. Is that better? That's better. Okay. Thank you. May it please the Court, Ryan O'Day, Shulman, Bashin, Friedman, and Bui. On behalf of Apelli's Aurora Capital Advisors, Richard Babcock and Anthony Nobles. I think it's important to note, as this panel has noted, it's not a high-level issue as to whether or not something is or is not property of the state. That is the only issue here, and from the first iteration of the complaint through to the second amended complaint, it seems like there is a square peg trying to be jammed in a round hole. And at each iteration of this complaint, I think they've only tried to change the peg size and perhaps a square peg is now inside a round hole, but it doesn't fit. And that's the problem here. Time in and time out, there are these legal theories that are being pushed forward in a complaint and in opposition to the motions to dismiss that have no supporting authority. At face value, there are statements made that this case is on all fours, this case is dispositive, but when you look at the cases, not one of them stand for the proposition that non-debtor corporate assets are property of a bankruptcy estate unless and until those assets are used to satisfy all corporate debt and then the money is distributed to shareholders. It is very appropriate to point out, as your honors did, state law controls this. It is without, it can't be reasonably disputed that state law controls one's property interests. California law is clear, and it's the case of Miller, that until property is distributed, a shareholder merely has an expectancy interest. Now, we have the issue of referencing articles of incorporation and the use of the phrase liquidation event, and what I believe plaintiff has done here is hung on the word liquidation event and applied that word liquidation to California law that says when a corporation is liquidated, there's more than an expectancy interest. However, we are talking about two completely different concepts. A liquidation event, as defined in articles of incorporation, is merely a contract among and between the shareholders as to their respective rights. It does not upend and cannot undermine applicable law. Applicable law in California, being California Corporation Code 2004, makes clear that the wedge that counsel's trying to drive between the concept of paid and provided for is semantics, because there's nothing that has been alleged, nothing that was shown that they were provided for. They needed to be paid. We have the IRS. We have the Aurora and the MedVenture capital, MedVenture transfers, which oddly enough, the biggest amount was paid through escrow on the sale of the wine property that plaintiff is not trying to unwind. So whether from a 549 standpoint, you look at 549C and the fact that I don't think they can unwind it under 549. And then we go to the alternative argument that California Code of Civil Procedure 1001A is to be used when there's a sale of all or substantially all of the assets. And as put forth in the brief, that may be so, but it's the sale of the wine estate that needs to be unwound. California law is clear, if that predicate event is not unwound, the transaction remains valid because it is voidable, not void. So at the end of the day, we keep coming back full circle to the point that they cannot show this was a state property. That is not the high level. That is this case. Well, the thing that I keep coming back to is, I think, it seems to me that if you're right, Mr. Brower played the system beautifully. You know, he played the court, he played the system beautifully. And it's hard to believe there's no legal doctrine that prevents Mr. Brower from engaging what, putting aside the technicalities, looks like a gigantic fraudulent transfer. Well, I think, and I mean this with all due respect, I think the statement oversimplifies the issue in the sense that it's not that there's no legal recourse here. It's legal recourse against whom, and alternatively, within what time frame. Let's take a step back, because at the end of the day, we have plaintiffs seeking to avoid transfers that happened in April of 2015 and December of 2015, as it pertains to my clients. The argument that the plan, without saying the word toll or told, somehow extended by six years the statute of limitation under 549 to bring an action within two years of transfer? There's also an allegation, at least, that Mr. Brower affirmatively concealed what was going on with the corporate money. Doesn't that, couldn't that give rise to tolling? It could give rise to tolling, but it was known long before that this was done. And I think the issue, and again, it's not necessarily before this panel as to when that time on the continuum arose, but at the end of the day, we need to look at when the transfer to my clients occurred. And to me, it's mind-boggling. In the state of California, you have tolling agreements and things that are viewed as contracts, a plan of reorganization, a contract. To me, it's almost inconceivable that a third party, not in privity of contract and without inability to vote or oppose a plan, is somehow bound by an extension of a statute of limitation by that many years. To me, it's just, it seems to be an abomination of jurisprudence. I don't know how that can be the case. But going forward from that point in time, because that's the time frame component, the against whom component. There are great claims that the estate may have against Brower. There are claims, if there were derivative claims, claims perhaps against Coastal, but let's be reminded why we're here today. Plaintiff is seeking to avoid transfers received by non-debtor third party creditors of a non-debtor corporation using its own assets, not property of the estate. So I think it is a full circle issue, and every path, as counsel says, there's this path to go down, there's that path, they all lead to the same place. How are you going to prove this is property of the estate? And as the bankruptcy court properly and appropriately found, plaintiff cannot do so. And with that, I have nine seconds left, I don't want to talk more than my co-counsel would like, so thank you. All right, you've used about seven minutes, so there's about four minutes each for the two of you. Who will go next? I will. Okay, go ahead please. If it pleases the court, my co-counsel, Mr. O'Day has covered a substantial portion of the argument here, and I would simply draw the court's attention to a couple of items. As the court indicated, or the court asked, shouldn't the bankruptcy court process provide some remedy to Mr. Rauer, now deceased, his admittedly abuse of the wine estate sale proceeds? He had a lot of money, he used it for a lot of reasons. He used it, but through the Coastal Cypress Corporation, and as the court identified, the bank, and this is a two-person fight, it is a bank between the now deceased Rauer and the bank. The bank had a whole range of options. They knew that there were these funds available, they could have brought a writ of attachment, they could have frozen those funds, in fact, as indicated in the brief, in the adversary proceeding at the very beginning of the case, they actually did seek a writ of attachment and got it against the home, but did not pursue it against the proceeds, even though the application has stated from the face of the docket, because the rest of it is unfortunately not as part of the record, they sought it, but they didn't pursue the writ of attachment. So they had a remedy, and as the court indicated, they could have appointed a trustee, they could have appointed, they could have converted it to a seven. Indeed, if they were seeking the Coastal Cypress, they could have sought to do a consolidation, and that, in turn, would have accommodated the Coastal Cypress creditors. And the second piece is, what happens to the Coastal Cypress creditors, and what happens to Coastal Cypress as a corporation? Because yes, there was a substantial sale of its assets, yes, under Corporation Code 1001, and the Articles of Incorporation, and at that time, the creditors had a claim against the corporation, or those shareholders had a claim, that they were entitled to the distribution. They didn't make the claim, the distribution was not made. Now, the Trustees Council refers repeatedly to this concept of a direct right, or an entitlement right, but that's not a description of ownership, certainly not of ownership of cash. And if you compare this, for example, to a secure creditors claim, first of all, when you have a secure transaction, that, in order for it to be enforceable as against creditors of an organization, you have to have it be perfected, so that it's public information. If it's cash, the only way to perfect an interest in cash is by possession. It has to be paid, or if it's in a bank account, you have to have a control agreement. The claiming party must have control over the money in order to claim ownership. That was not a claim in this case, and that is what the bankruptcy court identified, which was the distribution claim could have been made, but it wasn't. And the final piece here, which is this alter ego claim, which is continually revisited, is, as Mr. O'Day pointed out, under California law, it does not eliminate the corporate existence. It merely creates a liability, so that the claimant, the plaintiff, is on equal standing with the other creditors of the corporation. It is a determination as between the plaintiff and the corporation, not the plaintiff and the world. It does not create a right of the plaintiff against the corporation to make up her payments. All right. I want to make sure Mr. Serrano-Gutierrez has time. There's about... That's his time. All right. There's about three and a half minutes left, so please go ahead, sir. I'm sorry. You're muted. You're muted. If it may be, please accord, Brothers Serrano, on behalf of Oakville Curly, and I'll just touch on a few points that are particular to my client. Here, Oakville Curly was hired by COSO, the non-debtor corporation, and it entered an agreement with COSO to pay for the legal fees and costs incurred in the representation of Tata Julian, and also a non-debtor organization. So, therefore, it did incur liabilities and debts that it needed to be paid before any debts could be... Excuse me. Any proceeds could be provided to the shareholder here, the debtor. Therefore, there was no liquidation of them because there were debts and liabilities that needed to be accounted for for services that were rendered by Oakville Curly pursuant to that agreement. In terms of the alter ego doctrine, I just want to make one point clear, is that it does need to refer to California state law. And in California, it's a doctrine that it's a particular mechanism by which an individual can be held totally liable for the wrongdoing of his or her corporate ego. Therefore, it's a remedy. It does not... It is not a mechanism by which the true owner, quote unquote, of property can be ascertained. It is a remedy. And also, the amended articles, it simply would create, at most, potentially a claim against COSO, not against third parties that have no privity in that contract under California law. And... And lastly, the last point I'd like to make is that under California code, the shareholder did not need to approve any of the individual payments that were made to Oakville Curly because they were not substantially all the proceeds that were, at that time, after the wine and steak sale occurred. So therefore, there was no need to go back to the bankruptcy court to ask for permission because that was a decision that was made by the directors who act on behalf of the corporation. Shareholders do not act on behalf of the corporation. And with that, I will yield my time to my co-counsel if they'd like to make any other points. Okay. Everybody's shaking their heads, so thank you very much. We'll go back to Ms. Bogdanoff. About two and a half minutes or so. Yes. Yes, Your Honor. I will proceed quickly. Two of the appellee's most important cases in this case, Penasquito's and Miller v. McColgan. Penasquito cites California Corporations Code 2004. This is not a semantics conversation. California Corporations Code 2004 says, a corporation cannot distribute its assets until its officers have paid or made provision for all known debts and obligations. The or in that sentence indicates to me that the California legislature decided that made provision for is different than paid. At the time of the sale closing, the complaint alleges with adequate sufficiency that all debts at the time of sale were paid. The fact that the debtor went and bought a condo that had a mortgage is more evidence of the trustee's position. At the time he did that, he was not authorized to do that. We are not seeking to sue the mortgage holder on that property. And, in fact, the debtor and his wife returned the property as a transfer that was improper. We haven't talked about In re Pesciulli yet. In re Pesciulli is a case from New York that the trustee has cited significantly. And the bankruptcy court did not like the case primarily because I think it was a 727 action where you're dealing with whether the debtor should be discharged. The Second Circuit, in affirming that case, held almost as an aside. The bankruptcy court did not err in holding that the truck sale proceeds were property of the bankruptcy estate. Because Pesciulli, as the sole owner and shareholder of the leasing corporation, had full control of those proceeds. Who had full control of the sale proceeds after the wine estate property, after creditors had been paid and provided for? The bankruptcy estate. But is that consistent with California law? I mean, the 100 percent shareholder of a corporation has full control of all the corporation's assets because that person can elect the board of directors and so on. But isn't it clear under California law that the corporation's property is the corporation's property and not the shareholder's property? Maybe. If it's an alter ego, maybe not. I see my time has concluded. May I just conclude and let you know what I'm asking for today? Sure. One more sentence. We request that the panel vacate the judgment of the bankruptcy court that was partial, certified for appeal, reverse the order of the bankruptcy court, and hold that the net Thank you, Your Honors. Thank you, and thanks to all counsel for very good arguments. The matter is submitted. Thank you. Thank you.
judges: Faris, Brand, and Gan